UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                    :

SAEED AHMAD,                           :

                             :            13 Civ. 6394 (PAE)

                      Plaintiff,      :

                             :         <u>OPINION & ORDER</u>

                -v-               :

                             :

MORGAN STANLEY & CO., INC.,      :

                             :

                    Defendant.    :

                             :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Saeed Ahmad, a former auditor at Morgan Stanley & Co., Inc. ("Morgan Stanley"),
alleges that Morgan Stanley retaliated against him, in violation of the whistleblower protection
provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-
Frank"), 15 U.S.C. § 78u-6(h).  Such retaliation was, allegedly, a response to Ahmad's reports to
supervisors and certain government agencies of alleged deficiencies in Morgan Stanley's lending
practices.  Morgan Stanley moves to dismiss, primarily on the grounds that all adequately pled
acts of retaliation occurred before Dodd-Frank's effective date (July 22, 2010), and that Dodd-
Frank's whistleblower protection provision is not retroactive.  For the reasons that follow, the
Court grants the motion to dismiss.

I.      **Background**[1]

Because the Court holds that Dodd-Frank's whistleblower protection provision is not

retroactive, the Court divides its recitation of the facts between those occurring (1) before Dodd-

Frank became effective on July 22, 2010, and (2) after that date.

A.      **Alleged Protected Activity and Retaliation Before July 22, 2010**

Ahmad began working for Morgan Stanley as a credit audit specialist in 2006.  Am.

Compl. ¶ 13.  In September 2006, Ahmad began his first audit of loans made by the Credit

Department.  *Id.* ¶ 18.  During that audit, from November 2006 to March 2007, Ahmad informed

his supervisors of a number of problems with the audited loans.  *Id.* ¶¶ 18–24.

Ahmad alleges that he was met with retaliation.  On March 20, 2007, at the audit closeout

meeting, Jon LaMountain, co-head of the Credit Department, cursed and yelled at Ahmad,

calling Ahmad's analysis "bullshit."  *Id.* ¶ 25.  Ahmad was unable to respond because

LaMountain continued to curse and yell at him.  *Id.*  In March and April 2007, Gerry Rieger, the

Managing Director of the Audit Department, white-washed Ahmad's report and directed Ahmad

to make certain whitewashing changes himself.  *Id.* ¶¶ 28–33.  In April 2007, a Mr. Hawxhurst,

Vice President of the Audit Department, prohibited Ahmad from communicating with Credit

Department staff during his audit.  *Id.* ¶ 36.  In October 2007, Hawxhurst pressured Ahmad to

issue an incomplete report.  *Id.* ¶¶ 37–40.

In December 2007, Ahmad began his second audit.  *Id.* ¶ 41.  Hawxhurst forbade Ahmad

from asking questions at two preliminary audit meetings.  *Id.* ¶¶ 43–44.  When Hawxhurst saw

that Ahmad had identified problems with a certain loan, he yelled at Ahmad for spending too

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in the
Amended Complaint, Dkt. 22 ("Am. Compl."), to be true, drawing all reasonable inferences in
favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

much time on that issue.  *Id.* ¶ 47.  In June 2008, Ahmad submitted the audit report.  *Id.* ¶ 49.

That week, Doug Lyons, head of Credit-London, called Ahmad to criticize the report and inform

Ahmad that he would inform managing director Rieger of his disapproval.  *Id.*  Rieger and

Hawxhurst then prevented Ahmad from attending the audit closeout meeting, removed most of

the report's discussions of problematic loans, and changed the report's rating of the audited loans

to "Satisfactory."  *Id.* ¶¶ 51–52.

In July 2008, Ahmad began his third audit, in which he raised similar concerns as before.

*Id.* ¶ 54.  Madhu Panchagnula, an Executive Director in the Audit Department, re-wrote

Ahmad's report to tone down the concerns it raised and to give a "Satisfactory" rating to the

audited loans.  *Id.* ¶ 55.  On November 19, 2008, Panchagnula issued the report.  *Id.*

On December 10, 2008, Ahmad sent an anonymous memo regarding his audit findings

and the harassment he had experienced, first, to the former CEO of Morgan Stanley, John Mack,

and then, later, to Morgan Stanley's current Chairman and CEO, Dennis Lynch.[2]  *Id.* ¶ 56.  In

response, Morgan Stanley represented that it was conducting an internal investigation.  *Id.* ¶ 57.

On January 23, 2009, Ahmad attended his first meeting regarding this investigation.  *Id.* ¶ 58.

On March 13, 2009, Morgan Stanley ordered Ahmad to take an administrative leave of

absence.  *Id.* ¶ 60.  In August 2009, Ahmad returned from this leave.  *Id.* ¶ 61.  Also that month,

Morgan Stanley appears to have concluded its investigation.  *Id.* ¶ 59.  Ahmad alleges that, upon

his return, Morgan Stanley continued to harass and retaliate against him.  *Id.* ¶ 62.

---

[2] Paragraph 56 of the Amended Complaint states that Ahmad sent this memo on December 10, 2009, but it appears that he means to allege that he sent the memo on that same date in the year 2008.  That is because paragraph 58 states that the "the first meeting regarding the alleged internal investigation" prompted by the memo was held "on or about January 23, 2009," and paragraph 60 continues the narrative by describing events in March 2009.  *Id.* ¶¶ 56, 58, 60.

Ahmad alleges that Morgan Stanley further retaliated against him by lowering his compensation every year, denying him a bonus in his third year, failing to promote him, and not allowing him to have an attorney present when he met with Human Resources. *Id.* ¶¶ 68–71. Ahmad also states that, when he sought assistance from Human Resources regarding Hawxshurt's behavior, Human Resources told him that it had no interest in discussing his complaints.[3] *Id.* ¶ 72.

In November 2009, Ahmad missed five straight days of work. *Id.* ¶ 63. The Amended Complaint alleges that this was a result of stress caused by Morgan Stanley's retaliation, which, Ahmad alleges, was "designed to break [his] will." *Id.*

On November 19, 2009, Morgan Stanley placed Ahmad on short-term disability leave. *Id.* This was pursuant to Morgan Stanley's policy of automatically placing on such leave employees who miss five straight days of work for medical reasons. *Id.* ¶ 66.

On December 2, 2009, Ahmad sent letters to the Securities and Exchange Commission (SEC) and the Office of the Comptroller of the Currency (OCC) informing them of the loan deficiencies he had identified in his audits. *Id.* ¶ 67. On January 27, 2010, Ahmad sent similar letters to the Federal Reserve Bank. *Id.*

On May 19, 2010, Morgan Stanley placed Ahmad on long-term disability leave, apparently because Ahmad had suffered a nervous breakdown—a result, the Amended Complaint alleges, of Morgan Stanley's retaliatory actions against him. Ahmad was unable to return to work. *Id.* ¶ 64.

---

[3] The Amended Complaint does not list dates for the acts of retaliation alleged at paragraphs 68 through 72. However, at argument, ("Tr."), plaintiff's counsel acknowledged that these acts are alleged to have occurred before Ahmad was placed on disability leave, and accordingly, before the July 22, 2010 effective date of Dodd-Frank. Tr. 26–27.

**B.      Protected Activity and Retaliation After July 22, 2010**

As noted, Dodd-Frank went into effect on July 22, 2010.  *See* Dodd-Frank, Pub. L. No. 111-203, § 4, 124 Stat 1376, 1390 (June 21, 2010) ("Except as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act.").

Ahmad states that he engaged in protected activity after July 22, 2010.  The Amended Complaint alleges that Ahmad "further contact[ed]" the OCC, SEC, and Federal Reserve and "participat[ed] in investigations as required," Am. Compl. ¶ 76, although it does not attach a date to this activity or state whether it occurred after the effective date of Dodd-Frank.  During briefing on the motion to dismiss, however, Ahmad's counsel submitted a declaration attempting to clarify the point, stating:  "Ahmad continued to actively participate in the Federal Reserve Bank's investigation of Morgan Stanley through at least March, 2012," including by attending three meetings with Federal Reserve Bank officials in 2011 and 2012.  Dkt. 24 ("Balestriere Decl.") ¶¶ 2–3.

In October 2011, Ahmad's disability benefits were terminated.  Am. Compl. ¶ 73.  This is the sole act of retaliation that Ahmad alleges occurred after July 22, 2010.  Because the motion to dismiss turns heavily on this allegation, the Court quotes the relevant paragraph in full:

> It is [Morgan Stanley] policy that when an employee is on long-term disability leave, the employee's full salary shall continue to be paid by [Morgan Stanley's] insurance for the first 24 months after the initial 26 week period during which full salary is paid by [Morgan Stanley].  However, Ahmad stopped receiving payment in October of 2011, eight months early.  Ahmad contacted Defendant to correct this issue.  Defendant, though, failed to take corrective action because Ahmad engaged in protected activity under the Dodd-Frank Act.

*Id*.

### C.    Procedural Background

On September 11, 2013, Ahmad filed the original Complaint in this action.  Dkt. 1.  On

October 25, 2013, Morgan Stanley moved to dismiss.  Dkt. 8.  On November 15, 2013, Ahmad

served the Amended Complaint, bringing a single cause of action, under the whistleblower

protection provision of Dodd-Frank, 15 U.S.C. § 78u-6(h).[4]  On December 19, 2013, Morgan

Stanley filed a motion to dismiss the Amended Complaint, Dkt. 17, and an accompanying

memorandum of law, Dkt. 20 ("Def. Br") (originally filed as Dkt. 18).  Morgan Stanley argues

primarily that the Amended Complaint fails to allege any act of retaliation that occurred after

Dodd-Frank's effective date.  On January 9, 2014, Ahmad filed his opposition.  Dkt. 23 ("Pl.

Br.").  On January 30, 2014, Morgan Stanley replied.  Dkt. 31 ("Def. Reply Br.").  On February

10, 2014, the Court heard argument.

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  Accordingly, a district court

---

[4] Ahmad does not appear to have filed the Amended Complaint until January 2, 2014, Dkt. 22, when he did so at the Court's prompting, and which was well past the deadline (November 15, 2013) to amend, *see* Dkt. 12.  However, Morgan Stanley appears to have been timely served on that day with the Amended Complaint.  *See* Dkt. 13 (letter from Morgan Stanley dated November 21, 2013 requesting an extension of time to respond to the Amended Complaint and stating that "[c]urrently, the deadline for Defendant to respond is December 6, 2013," which was three weeks after November 15, 2013).  Morgan Stanley has not objected to the timeliness of the Amended Complaint.  The Court therefore treats the Amended Complaint as timely filed.

must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Discussion

Morgan Stanley argues that the Amended Complaint fails because it does not adequately allege any act of retaliation that occurred after the effective date of Dodd-Frank, July 22, 2010. Ahmad counters that Dodd-Frank's whistleblower retaliation provision, 15 U.S.C. § 78u-6(h) ("§ 78u-6(h)"), is retroactive, such that liability can be based on retaliation alleged to have occurred before July 22, 2010. Alternatively, Ahmad argues that the Amended Complaint adequately alleges retaliation after July 22, 2010. For the reasons that follow, the Court holds that § 78u-6(h) is not retroactive and that Ahmad has not adequately alleged retaliation after July 22, 2010. The Amended Complaint therefore fails to state a claim.[5]

---

[5] Morgan Stanley argues, in the alternative, that § 78u-6(h), which provides a cause of action to "whistleblowers" who are retaliated against, only provides a cause of action to those who meet § 78u-6(a)(6)'s definition of "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the Commission." *See* Def. Br. 16–21 (citing 15 U.S.C. § 78u-6(a)(6) and *Asadi v. G.E. Energy (USA) LLC*, 720 F.3d 620 (5th Cir. 2013)). Under this reading of the statute, Ahmad would not have become a whistleblower until he sent his letter to the SEC on December 2, 2009, and after which date, Morgan Stanley argues, the Amended Complaint does not adequately allege any act of retaliation. Ahmad, however, urges the Court to defer to the SEC's interpretation of the statute, 17 C.F.R. § 240.21F-2(b)(1), under which the protection of § 78u-6(h) extends to certain persons who are not "whistleblowers" within the meaning of § 78u-6(a)(6). Because the Amended Complaint is otherwise deficient, the Court need not reach this issue. However, as to this point, the Court finds persuasive the analyses by Judges Furman and Sand, finding the statute ambiguous on this point and deferring to the SEC's reasonable (and broader) interpretation of the term "whistleblower" as used in § 78u-6(h). *See Murray v. UBS Securities, LLC*, No. 12 Civ. 5914 (JMF), 2013 WL 2190084 (S.D.N.Y. May 21, 2013); *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066 (S.D.N.Y. May 4, 2011).

### A.      Dodd-Frank's Whistleblower Retaliation Cause of Action is Not Retroactive

"As a general rule, a new statute does not apply retroactively to conduct that occurred prior to the statute's enactment." *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 590 (S.D.N.Y. 2012).  This presumption "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).  The presumption arises because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 265.  Thus, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 272 (citations omitted).

The presumption against retroactivity is not, however, as simple as it sounds.  The presumption co-exists, sometimes uneasily, with the principle that "a court is to apply the law in effect at the time it renders its decision." *Id.* at 264 (citation omitted).  Thus, "[e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations." *Id.* at 273.  For example, the presumption against retroactivity does not apply when the statute (1) "authorizes or affects the propriety of prospective relief," (2) "confer[s] or oust[s] jurisdiction," or (3) makes "[c]hanges in procedural rules." *Id.* at 273–75.  The presumption against retroactivity does, however, apply when "the new provision attaches new legal consequences to events completed before its enactment," *i.e.*, when it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Id.* at 270, 280.  For example, a provision granting the right to a jury trial under a certain cause of action "is plainly a procedural change of the sort that would ordinarily govern in trials conducted after its

effective date," whereas a provision authorizing compensatory damages under that same cause of action "is the kind of provision that does not apply to events antedating its enactment in the absence of clear congressional intent."  *Id.* at 280, 283.

Ahmad argues that the presumption against retroactivity does not apply to § 78u-6(h), because it makes only procedural changes to pre-existing law and does not create new duties or liabilities.  In Ahmad's view, § 78u-6(h) merely changes the statute of limitations and exhaustion requirements for the pre-existing whistleblower retaliation cause of action under the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), 18 U.S.C. § 1514(A), under which employers such as Morgan Stanley were "already prohibited from retaliating against employees who make the same reports and complaints as Ahmad did here."  Pl. Br. 18.

The Court is unpersuaded.  Section 78u-6(h) does not amend the procedural rules for bringing a Sarbanes-Oxley whistleblower claim.  Rather, it creates an entirely new whistleblower cause of action, with its own prohibited conduct, statute of limitations, and remedies.  *See* 15 U.S.C. § 78u-6(h)(1)(B)(i) (entitled "Cause of action") ("An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C)."); *see also Landgraf*, 511 U.S. at 283 ("§ 102 can be seen as creating a new cause of action, and its impact on parties' rights is especially pronounced").

If this new cause of action differed from the Sarbanes-Oxley whistleblower cause of action only in matters of procedure, its creation conceivably might be deemed no different than changing the procedures attached to the Sarbanes-Oxley whistleblower provision, thereby avoiding the presumption against retroactivity.  But the causes of action *are* substantively different:  Dodd-Frank allows whistleblowers to recover double back pay, *see* 15 U.S.C. § 78u-

6(h)(1)(C), whereas Sarbanes-Oxley does not allow for double recovery, *see* 18 U.S.C. § 1514A(c)(2).  The Dodd-Frank whistleblower provision is not, therefore, merely a fraternal twin of the Sarbanes-Oxley whistleblower provision, differing only in procedural requirements and tucked into a different part of the United States Code.  Rather, it is a distinct cause of action that "increase[s] a party's liability for past conduct." *Landgraf*, 511 U.S. at 280.  Accordingly, under *Landgraf*, the presumption against retroactivity applies.  As Ahmad has not shown, or even purported to show, clear evidence of congressional intent that would rebut the presumption, § 78u-6(h) cannot apply retroactively.  Ahmad cannot, therefore, bring suit under § 78u-6(h) for conduct that occurred before Dodd-Frank's effective date, July 22, 2010.

Ahmad seeks to avoid this conclusion by citing the holdings of two judges in this District that section 929A of Dodd-Frank—a different provision, which amended the Sarbanes-Oxley whistleblower protection provision to clarify its applicability to employees of subsidiaries of publicly traded companies—did not trigger the presumption against retroactivity, on the ground that section 929A merely "clarifie[d] existing law, rather than effecting a substantive change to the law." *Leshinsky*, 873 F. Supp. 2d at 590; *accord Ashmore v. CGI Group Inc.*, No. 11 Civ. 8611 (LBS), 2012 WL 2148899 (S.D.N.Y. June 12, 2012); *see also* Pl. Br. 18.  But the holding that the presumption against retroactivity was not triggered by that clarifying provision of Dodd-Frank has no bearing on whether the presumption applies to the distinct substantive provision of Dodd-Frank at issue here.  *See Landgraf*, 511 U.S. at 280 ("[T]here is no special reason to think that all the diverse provisions of the Act must be treated uniformly for such purposes.").  And, as noted, section 78u-6(h) creates a new cause of action; it does not purport to amend or otherwise clarify Sarbanes-Oxley.

Ahmad next argues that the double back pay provision of § 78u-6(h) does not actually change the potential exposure of defendants such as Morgan Stanley, because Sarbanes-Oxley "already awarded a prevailing plaintiff 'all relief necessary to make the employee whole . . . [including] the amount of back pay, with interest; and . . . compensation for any special damages sustained as a result of the discrimination.'"  Pl. Br. 18–19 (quoting 18 U.S.C. § 1514A(c)).  But relief "necessary to make the employee whole" does not include double recovery for back pay. To be sure, an employee who can prove special damages under Sarbanes-Oxley might be able to recover more than an employee who recovers double back pay under Dodd-Frank.  But the possibility of greater recovery under Sarbanes-Oxley does not change the fact that Dodd-Frank's double back pay recovery provision will often "increase a party's liability for past conduct." *Landgraf*, 511 U.S. at 280.  When a whistleblower cannot prove special damages, recovery under Dodd-Frank will be substantially greater than under Sarbanes-Oxley.

Ahmad also appears to argue, in the alternative, that if the Court holds that applying § 78u-6(h) retroactively would be impermissible *because* of the double back pay provision, the Court should apply § 78u-6(h) retroactively *without* the double back pay provision.  Pl. Br. 10. However, Ahmad cites no authority permitting a court to selectively read, and retroactively apply part of, a new cause of action.  His proposal is, further, inconsistent with the mandatory nature of the § 78u-6(h) relief.  *See* 15 U.S.C. § 78u-6(h) ("Relief for an individual prevailing in an action brought under subparagraph (B) *shall include* . . . 2 times the amount of back pay otherwise owed to the individual, with interest.") (emphasis added).

In a final argument, Ahmad contends, somewhat cryptically, that he "still has a claim under Dodd-Frank and Sarbanes-Oxley for the damages awarded by Sarbanes-Oxley pre-amendment." *Id.*  But that is wrong.  There is no Dodd-Frank whistleblower cause of action

other than that conferred by § 78u-6(h).  And as Ahmad acknowledged at argument, his Sarbanes-Oxley claim is now time-barred.  Tr. 23–24.

In sum, § 78u-6(h) creates a new cause of action that whistleblowers may bring against present or former employers if they have been retaliated against for their whistleblowing activity.  It establishes a distinct procedural and remedial scheme from the whistleblower cause of action available under Sarbanes-Oxley.  Section 78u-6(h) is not a mere "[c]hange[] in procedural rules" that "regulates secondary rather than primary conduct."  *Landgraf*, 511 U.S. at 275.  Rather, if applied to pre-enactment acts of retaliation, it would "attach[] new legal consequences to events completed before its enactment," by "increas[ing] a party's liability for past conduct."  *Id.* at 270, 280.  The presumption against retroactivity, which here lies unrebutted, applies with full force.

### B.  Ahmad Does Not Adequately Allege Retaliation After Dodd-Frank's Effective Date

Because § 78u-6(h) is not retroactive, Morgan Stanley is liable only for acts of retaliation committed on or after Dodd-Frank's effective date, July 22, 2010.  The only event of conceivable retaliation after that date identified in the Amended Complaint is the termination, in October 2011, of Ahmad's disability benefits.  Am. Compl. ¶ 73; *see also* Pl. Br. 6.  But the Amended Complaint cannot reasonably be read to allege that this act constituted retaliation by Morgan Stanley.  First, the Amended Complaint does not allege that *Morgan Stanley* terminated Ahmad's benefits—it alleges that the *insurance carrier* terminated Ahmad's benefits.  Am. Compl. ¶ 73.  Second, the Amended Complaint does not allege that Morgan Stanley caused the insurance carrier to terminate Ahmad's benefits; nor does it allege facts that would give rise to such an inference.  And an allegation of nefarious interference by Morgan Stanley is, without more, highly implausible, because the Amended Complaint states that Morgan Stanley paid Ahmad's benefits for the full 26 weeks provided for in its internal policy, and that the insurance

carrier then paid Ahmad's benefits before terminating them. *Id.* The Amended Complaint leaves it a mystery why Morgan Stanley would meddle with Ahmad's disability benefits in October 2011, 17 months after he went on long-term disability leave. Third, the Amended Complaint's allegation that Morgan Stanley "failed to take correction action" when contacted by Ahmad, *id.*, does not give rise to an inference of retaliation, both because no facts are alleged suggesting either that Morgan Stanley's inaction reflected anything more than bureaucratic indifference, or that Morgan Stanley had a duty (or the authority) to correct misfeasance by the insurance carrier.

The sole candidate for post-Dodd-Frank retaliation, the termination of Ahmad's disability benefits, is, thus, not a winning one. The Amended Complaint therefore fails to adequately allege retaliation.

## CONCLUSION

For the foregoing reasons, the Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 17, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 21, 2014
       New York, New York